IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

COLUMBIA DIVISION

| | |
|---|---|
| Robert Lee Reddock, #270080, ) | |
| ) | |
| Petitioner, ) | Civil Action No. 3:09-204-RBH-JRM |
| ) | |
| v. ) | |
| ) | **REPORT AND RECOMMENDATION** |
| ) | |
| JON OZMIT, Director of SC Dept ) | |
| of Corr; ) | |
| WILLIE EAGLETON, Warden ) | |
| Evans Correctional Institution, ) | |
| ) | |
| Respondents. ) | |
| _____) | |

Petitioner, Robert Lee Reddock, ("Reddock"), is an inmate at the South Carolina Department of Corrections serving a sentence of twelve years and four months imprisonment for armed robbery. Reddock filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 which was received by the Court on January 27, 2009. Respondents filed a return and motion for summary judgment on June 19, 2009. Because Reddock is proceeding *pro se*, an order pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) was issued on June 22, 2009 advising him of his responsibility to respond to the motion for summary judgment. Reddock filed his response to the motion on October 1, 2009.

1

**Facts**[1]

1. On July 2, 2001, a lone gunman robbed the Centura Bank in Florence, South Carolina of approximately $120,000. A dye pack was placed with the currency.

2. The robber fled in a vehicle. A witness who attempted to follow reported that the dye pack activated.

3. The initial investigation was conducted by Investigator Yarborough of the Florence County Sheriff's Office. Special Agent Bostaph of the FBI assisted.

4. Reddock, a/k/a "Moochy" was developed as a suspect. He lived in Lamar, South Carolina. Since Lamar is in Darlington County, Lt. Bryant of the Darlington County Sheriff's Office joined the investigation.

5. On July 6, 2001, Agent Bostaph appeared before Municipal Judge Carter of Lamar and obtained a search warrant for Reddock's residence.

6. The search was conducted July 6, 2001. Among the items seized was a dye stained .38 revolver and dye stained sheets.

7. On that same day, July 6, 2001, Investigator Yarborough obtained an arrest warrant from a Florence County judicial officer. The arrest warrant was submitted to the United States Marshal's Service Operation Intercept.

8. Reddock was arrested by the Marshal's Service in Washington, D.C. on July 7, 2001. A search incident to the arrest provided further evidence linking Reddock to the robbery.

---

[1]These "facts" are summarized largely from the briefs, and attachments thereto, filed in connection with a pretrial motion to suppress the evidence obtained from the search of Reddock's residence and the search incident to his arrest.

9.  On July 7, 2001, a complaint was filed and an arrest warrant was issued by then United States Magistrate Judge Terry L. Wooten. *See* United States v. Reddock, 4:01-cr-00409. The state arrest warrant was dismissed. Reddock was returned to South Carolina and made an initial appearance on August 2, 2001. He was arraigned on September 5, 2001.

10. On October 18, 2001, Investigator Yarborough obtained a second state arrest warrant charging Reddock.

11. The federal indictment was dismissed on October 29, 2001.

12. Reddock was served with the new state arrest warrant.

13. Reddock was indicted by the Florence County Grand Jury in January of 2002.

14. On January 7, 2003, Reddock's attorney, Steve Wukela, Jr., Esquire, filed a motion to suppress the evidence obtained from the search of the residence and incident to Reddock's arrest.

15. A suppression hearing was held on January 21, 2003. (App. 29). The parties filed additional briefing. The motion to suppress was denied. (App. 5 and 215).

16. On January 30, 2003, Reddock entered an Alford[2] plea to armed robbery. The plea was negotiated for the sentence imposed (12 years, 4 months), and other charges were dismissed.

17. An Anders[3] brief was filed by the South Carolina Office of Appellate Defense raising the following issue:

---

[2] North Carolina v. Alford, 400 U.S. 25 (1970).

[3] Anders v. California, 386 U.S. 738 (1967).

3

> The lower court erred in accepting appellant's guilty plea because it
> was given without an understanding of sentencing consequences.

Reddock filed a *pro se* brief arguing that his conviction was void because he requested, but did not receive, a preliminary hearing.

18. The appeal was dismissed by the South Carolina Court of Appeals on August 24, 2004.

19. Reddock did not seek further review by the South Carolina Supreme Court.

20. The Court of Appeals returned the Remittitur on September 27, 2004.

21. Reddock filed an application for post-conviction relief ("PCR") on October 29, 2004. (App. 139).[4]

22. An evidentiary hearing was held on June 12, 2006. (App. 154). Reddock was represented by Phillip B. Atkinson, Esquire.

23. The PCR court issued an order of dismissal dated August 25, 2006. (App. 245).

24. A petition for writ of certiorari was filed by the South Carolina Commission of Indigent Defense raising the following issue:

> Trial counsel erred in advising petitioner to plead guilty because the
> holes in the state's case provided ample evidence of reasonable doubt
> on the question of guilt in the case.

25. The South Carolina Supreme Court denied the petition for writ of certiorari on January 23, 2008.

26. The Remittitur was returned on February 8, 2008.

---

[4] Reddock filed a PCR while his direct appeal was pending. It was dismissed without prejudice on June 3, 2004.

## Grounds for Relief

In his present petition, Reddock asserts that he is entitled to a writ of habeas corpus on the following grounds:

**Ground One:** Denied due rights process/denied my preliminary hearing eventhought(sic) requested one through written request.

**Ground Two:** Use of illegal obtained evidence in state court as means of conviction. Fruits of poisonous tree should've applied.

**Ground Three:** Prejudiced by use of illegal evidence by way of illegal arrest warrant from state magistrate and state officer.

**Ground Four:** Denial of effective assistance of counsel.

## Discussion

### A. Anti-Terrorism and Effective Death Penalty Act ("AEDPA") Statute of Limitations

Respondents assert that the petition should be dismissed because it was not timely filed under the one-year statute of limitations created by the AEDPA. The AEDPA became effective on April 24, 1996. The AEDPA substantially modified procedures for consideration of habeas corpus petitions of state inmates in the federal courts. One of those changes was the amendment of 28 U.S.C. § 2244 to establish a one-year statute of limitations for filing habeas petitions. Subsection (d) of the statute now reads:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of–
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

5

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

The one-year statute of limitations begins to run on the date the Petitioner's conviction becomes final, not at the end of collateral review. Harris v. Hutchinson, 209 F.3d 325, 327 (4th Cir. 2000). In South Carolina, a defendant must file a notice of appeal within 10 days of his conviction. Rule 203(b)(2), SCACR. Thus if a defendant does not file a direct appeal, his conviction becomes final ten days after the adjudication of guilt. Crawley v. Catoe, 257 F.3d 395 (4th Cir. 2001). If a defendant files a direct appeal and his conviction is affirmed, the conviction becomes final 90 days after the final ruling of the South Carolina Supreme Court. Harris, 209 F.3d at 328, n. 1 (conviction become final on the expiration of the 90-day period to seek review by the United States Supreme Court).

The statute of limitations is tolled during the period that "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). The statute of limitations is tolled for the entire period of the state post-conviction process, "from initial filing to final disposition by the highest state court (whether decision on the merits, denial of certiorari, or expiration of the period of time to seek further appellate

review)." Taylor v. Lee, 196 F.3d 557, 561 (4th Cir. 1999). Following the denial of relief in the state courts in state habeas proceedings, neither the time for filing a petition for certiorari in the United States Supreme Court, nor the time a petition for certiorari is considered by the United States Supreme Court, is tolled." Crawley v. Catoe, 258 F.3d at 399. A state collateral proceeding must be "properly filed" for the statutory tolling provisions of 28 U.S.C. § 2244(d)(2) to apply. "(A)n application is 'properly filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings. These usually prescribe, for example, the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee." Artuz v. Bennett, 531 U.S. 4, 8 (2000) (footnote omitted). "When a post-conviction petition is untimely under state law, 'that [is] the end fo the matter' for purposes of § 2244(d)(2)." Pace v. DiGulielmo, 544 U.S. 408, 414 (2005) quoting Carey v. Saffold, 536 U.S. 214, 236 (2002).

Generally, computing periods of time under 28 U.S.C. § 2244(d)(2) is pursuant to Fed. R. Civ. P. 6(a). Hernandez v. Caldwell, 225 F.3d 435, 439 (4th Cir. 2000).

The Fourth Circuit has held that the statute of limitations in § 2254 is not jurisdictional, but subject to the doctrine of equitable tolling. Equitable tolling applies only in "those rare instances where–due to circumstances external to the [Petitioner's] own conduct–it would be unconscionable to enforce the limitation against the [Petitioner]." Harris, 209 F.3d at 330. Under § 2244(d), the State bears the burden of asserting the statute of limitations. Petitioner then bears the burden of establishing that his petition is timely or that he is entitled to the benefit of the doctrine of equitable tolling. Hill v. Braxton, 277 F.3d 701 (4th Cir. 2002). To benefit from the doctrine of equitable tolling, a petitioner must show: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way" preventing him from timely filing. Pace, 544 U.S. at

418. An attorney's mistake in calculating the filing date for a habeas petition relative to the AEDPA's statute of limitations is not an extraordinary circumstance warranting equitable tolling. Lawrence v. Florida, 549 U.S. 327, 336-337 (2007) ("Attorney miscalculation [of a deadline] is simply not sufficient to warrant equitable tolling, particularly in the postconviction context where prisoners have no constitutional right to counsel."). *See also* Harris, 209 F.3d at 331.

Respondent concedes that if Reddock was entitled to appeal to the United States Supreme Court following denial of the petition for writ of certiorari by the South Carolina Court of Appeals, the present petition would be timely under Harris v. Hutchinson, *supra* because his conviction would not have become final for an additional 90 days. Respondent offers several arguments which the undersigned finds unpersuasive based on the reasoning of Goodman v. Cartledge, 2008 WL 4458186, *7 (D.S.C. ) and Gainey v. South Carolina, 2009 WL 2644013, *4 (D.S.C. ), noting that it is arguable that a decision of the South Carolina Court of Appeals may be appealed to the United States Supreme Court without first seeking review by the South Carolina Supreme Court.

### B. Ineffective Assistance of Counsel

Reddock asserts that his attorney was ineffective for failing to properly investigate the case, but instead accepted the State's version of what occurred. Respondent asserts that this claim, as worded in the petition, is procedurally barred. However, the undersigned concedes that Reddock has generally exhausted a claim that counsel failed to properly investigate his case.

The Sixth Amendment to the United States Constitution guarantees a defendant the right to effective assistance of counsel in a criminal prosecution. McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970). In the case of Strickland v. Washington, 466 U.S. 668 (1984), the United States Supreme Court set forth two factors that must be considered in evaluating claims for ineffective

assistance of counsel. A petitioner must first show that his counsel committed error. If an error can be shown, the court must consider whether the commission of an error resulted in prejudice to the defendant.

To meet the first requirement, "[t]he defendant must show that counsel's representation fell below an objective standard of reasonableness." Strickland, at 688. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Turner v. Bass, 753 F.2d 342, 348 (4th Cir. 1985) quoting Strickland, *reversed on other grounds*, 476 U.S. 28 (1986). In meeting the second prong of the inquiry, a complaining defendant must show that he was prejudiced before being entitled to reversal. Strickland requires that:

> [T]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.
>
> * * *
>
> [A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. . . the court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. (Emphasis added).

Strickland at 694-95.

Under the AEDPA, a federal habeas court must determine whether the state court's decision "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The court's analysis should center on whether the state courts properly applied the Strickland test. *See* Williams v. Taylor, 529 U.S. 362 (2000). ("Strickland test provides sufficient guidance for resolving virtually

9

all ineffective assistance of counsel claims.")

Ineffective assistance of counsel claims may be asserted in limited circumstances where the petitioner has entered a plea of guilty. A guilty plea generally precludes the petitioner from challenging defects in the process which occurred prior to the plea. He "may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in McMann." Tollett v. Henderson, 411 U.S. 258, 267 (1973). When such a claim is raised, the voluntariness issue is subsumed within the claim of effectiveness of the attorney's assistance. Hill v. Lockhart, 474 U.S. 52, 56 (1985).

In order to prevail on a claim of ineffective assistance of counsel pertaining to a guilty plea, a petitioner must show that his lawyer's performance was incompetent, i.e., the first prong of the Strickland test. Under this prong, counsel "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Strickland, 466 U.S. at 691. The prejudice prong of the Strickland test is modified and the petitioner must show "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59.

An attorney has a duty to make a reasonable factual and legal investigation to develop appropriate defenses. Sneed v. Smith, 670 F.2d 1348 (4th Cir. 1982). The reasonableness of the investigation is evaluated by the totality of the circumstances facing the attorney at the time. Bunch v. Thompson, 949 F.2d 1354 (4th Cir. 1991), *cert. denied*, 505 U.S. 1230 (1992). The Courts recognize limits to investigation based on time, resources, and relevance and conclude that "Strickland does not impose a constitutional requirement that counsel uncover every scrap of evidence that could conceivably help their client." Green v. French, 143 F.3d 865, 892 (4th Cir.

1998), *abrogated on other grounds* by Williams v. Taylor, 529 U.S. 362 (1998). A decision not to investigate a particular avenue of defense is assessed by the same standard of "reasonableness in all the circumstances" by which an attorney's performance is measured in other areas. Strickland, 466 U.S. 690-91. A petitioner asserting a claim of ineffectiveness of counsel in failing to investigate must make a showing that the failure was prejudicial. Generally, the failure to investigate and present a potential alibi witness supports a claim of ineffective assistance of counsel. However, at the PCR hearing, the petitioner must present evidence establishing what the witness would have said at trial. Bassette v. Thompson, 915 F.2d 932 (4th Cir. 1990), *cert. denied*, 499 U.S. 982 (1991).

Reddock decided to enter his Alford plea after his suppression motion was denied. Even though he continued to maintain his innocense, the dye stained sheets and revolver from his house and the dye stained money on his person (and the fact that his hands were stained with dye) would have been introduced into evidence at trial. Reddock's chief complaint is that his attorney failed to verify the existence of this evidence, but instead accepted the word of the Solicitor. However, at the PCR hearing, Reddock presented no evidence that the Solicitor's statements about the evidence were inaccurate. The only other piece of information that Reddock was unaware of at the time of his plea was the fact a protective order shielding one of the bank tellers from testifying due to psychiatric reasons, was issued prior to the trial. The PCR court concluded that Reddock failed to establish prejudice because he did not offer proof as to the non-existence of the physical evidence, and the protective order did not necessarily mean that the witness would not testify.

The remainder of Reddock's allegations concern information he was aware of at the time of his plea which he argues could have been presented to create a reasonable doubt as to his guilt at trial. *See generally*, Petition for Writ of Certiorari. In essence, Reddock argues that his attorney

11

should not have recommended that he enter a plea. However, at the plea hearing, Reddock stated under oath (App. 9) that no one pressured him to plead and the decision was his own. (App. 14).

**C. Waiver**

Respondents argue that Reddock's Alford plea, which is generally considered the legal equivalent of a guilty plea, constitutes a waiver of the right to assert his remaining claims.

Generally, a voluntary plea of guilty precludes any attack based on antecedent non-jurisdictional defects. Tollett v. Henderson, 411 U.S. 258 (1973). This rule is applicable in habeas cases where state law bars litigation of such claims after a guilty plea. Under South Carolina law "'a plea of guilty, voluntarily and understandingly made constitutes a waiver of non-jurisdictional defects and defenses...prior to the plea.'" Frazier v. South Carolina, 430 F.3d 696, 709-710 (4th Cir. 2005) quoting Rivers v. Strickland, 264 S.C. 121, 213 S.E.2d 97, 98 (1975).

Reddock's other claims are precluded by this rule. His claims of illegal search and seizure (Ground 1), unlawful arrest (Ground 2), and denial of due process because he did not receive a preliminary hearing (Ground 3) are all non-jurisdictional defects alleged to have occurred prior to the plea.

**D. Procedural Bar**

Respondent asserts that Grounds 1-3 are also barred because they were never presented for review to the South Carolina appellate courts.

Exhaustion and procedural bypass are separate theories which operate in a similar manner to require a habeas petitioner to first submit his claims for relief to the state courts. The two theories rely on the same rationale. The general rule is that a petitioner must present his claim to the highest state court with authority to decide the issue before the federal court will consider the claim.

### 1. Exhaustion

The theory of exhaustion is based on the statute giving the federal court jurisdiction of habeas petitions. Applications for writs of habeas corpus are governed by 28 U.S.C. § 2254, which allows relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States." The statute states in part:

> (b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that
>
> > (A) the applicant has exhausted the remedies available in the courts of the State; or
> >
> > (B)(i) there is either an absence of available State corrective process; or
> >
> > (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
>
> (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.
>
> (3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.
>
> (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

This statute clearly requires that an applicant pursue any and all opportunities in the state courts before seeking relief in the federal court. When subsections (b) and (c) are read in conjunction, it is clear that § 2254 requires a petitioner to present any claim he has to the state courts before he can proceed on the claim in this court. *See* O'Sullivan v. Boerckel, 526 U.S. 838 (1999).

The United States Supreme Court has consistently enforced the exhaustion requirement.

> The exhaustion doctrine existed long before its codification by Congress in 1948. In Ex parte Royall, 117 U.S. 241, 251 (1886), this Court wrote that as a matter of comity, federal courts should not consider a claim in a habeas corpus petition until after the state courts have had an opportunity to act....

Rose v. Lundy, 455 U.S. 509, 515 (1982).

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction. The first avenue is through a direct appeal and, pursuant to state law, he is required to state all his grounds in that appeal. *See* SCACR 207(b)(1)(B) and Blakeley v. Rabon, 266 S.C. 68, 221 S.E.2d 767 (1976). The second avenue is by filing an application for post-conviction relief ("PCR"). See S.C. Code Ann. § 17-27-10 *et seq*. A PCR applicant is also required to state all of his grounds for relief in his application. *See*, S. C. Code Ann. § 17-27-90. A PCR applicant cannot assert claims on collateral attack which could have been raised on direct appeal. Simmons v. State, 264 S.C. 417, 215 S.E.2d 883 (1975). Strict time deadlines govern direct appeal and the filing of a PCR in the South Carolina Courts. The South Carolina Supreme Court will only consider claims specifically addressed by the PCR court. If the PCR court fails to address a claim as is required by S.C.Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP. Failure to do so will result in the application of a procedural bar by the South Carolina Supreme Court. Marlar v. State, 375 S.C. 407, 653 S.E.2d 266 (2007). A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

When the petition for habeas relief is filed in the federal court, a petitioner may present only those issues which were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of the PCR application, whether or not the Supreme Court actually

reached the merits of the claim.[5] Further, he may present only those claims which have been squarely presented to the South Carolina appellate courts. "In order to avoid procedural default [of a claim], the substance of [the] claim must have been fairly presented in state court...that requires the ground relied upon [to] be presented face-up and squarely. Oblique references which hint that a theory may be lurking in the woodwork will not turn the trick." Joseph v. Angelone, 184 F.3d 320, 328 (4th Cir. 1999) (internal quotes and citations omitted). If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts, Patterson v. Leeke, 556 F.2d 1168 (4th Cir. 1977) and Richardson v. Turner, 716 F.2d 1059 (4th Cir. 1983). If petitioner has failed to raise the issue before the state courts, but still has any means to do so, he will be required to return to the state courts to exhaust the claims. *See* Rose v. Lundy, *supra*.

### 2. Procedural Bypass[6]

Procedural bypass is the doctrine applied when the person seeking relief failed to raise the claim at the appropriate time in state court and has no further means of bringing that issue before the state courts. If this occurs, the person is procedurally barred from raising the issue in his federal habeas petition. The United States Supreme Court has clearly stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts, Smith v. Murray, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings,

---

[5]In cases where the South Carolina Supreme Court applied a procedural bar, however, this court is directed to also apply that bar, except in certain limited circumstances. See discussion below on procedural bypass.

[6]This concept is sometimes referred to as procedural bar or procedural default. If a petitioner procedurally bypasses his state remedies, he is procedurally barred from raising them in this court.

if a state has procedural rules which bar its courts from considering claims not raised in a timely fashion. The two routes of appeal in South Carolina are described above, and the South Carolina Supreme Court will refuse to consider claims raised in a second appeal which could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court.

If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. State procedural rules promote

> not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

Reed v. Ross, 468 U.S. 1, 10-11 (1984).

Although the federal courts have the power to consider claims despite a state procedural bar,

> the exercise of that power ordinarily is inappropriate unless the defendant succeeds in showing both 'cause' for noncompliance with the state rule and 'actual prejudice resulting from the alleged constitutional violation.'

Smith v. Murray, *supra*, quoting Wainwright v. Sykes, 433 U.S. at 84 (1977); *see also* Engle v. Isaac, 456 U.S. 107, 135 (1982).

Stated simply, if a federal habeas petitioner can show (1) cause for his failure to raise the claim in the state courts, and (2) actual prejudice resulting from the failure, a procedural bar can be ignored and the federal court may consider the claim. Where a petitioner has failed to comply with state procedural requirements and cannot make the required showing(s) of cause and prejudice, the federal courts generally decline to hear the claim. *See* Murray v. Carrier, 477 U.S. 478, 496 (1986).

### 3. Inter-relation of Exhaustion and Procedural Bypass

As a practical matter, if a petitioner in this court has failed to raise a claim in state

16

court, and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts, and this court is barred from considering the claim (absent a showing of "cause" and "actual prejudice"). In such an instance, the exhaustion requirement is "technically met" and the rules of procedural bar apply. Matthews v. Evatt, 105 F.3d 907 (4th Cir. 1997); cert. denied, 522 U.S. 833 (1997) citing Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991); Teague v. Lane, 489 U.S. 288, 297-98 (1989); and George v. Angelone, 100 F.3d 353, 363 (4th Cir. 1996).

### 4.     **Excusing Default**

The requirement of exhaustion is not jurisdictional, and this court may consider claims which have not been presented to the South Carolina Supreme Court in limited circumstances**.** Granberry v. Greer, 481 U.S. 129, 131 (1989). First, a petitioner may obtain review of a procedurally barred claim by establishing cause for the default and actual prejudice from the failure to review the claim. Coleman v. Thompson, 501 U.S. at 750 and Gary v. Netherland, 518 U.S. 152, 162 (1996). Second, a petitioner may rely on the doctrine of actual innocense.

A petitioner must show both cause and actual prejudice to obtain relief from a defaulted claim. In this context, "cause" is defined as "some objective factor external to the defense [that] impeded counsel's efforts to comply with the State's procedural rule." Strickler v. Greene, 527 U.S. 263, 283 n. 24 (1999) (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986). A petitioner may establish cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor which hindered compliance with the state procedural rule, demonstrate the novelty of his claim, or show interference by state officials. Murray v. Carrier; Clozza v. Murray, 913 F.3d 1092 (4th Cir. 1990), *cert. denied*, 499 U.S. 913 (1991); and Clanton v. Muncy, 845 F.2d 1238 (4th

17

Cir.), *cert. denied*, 485 U.S. 1000 (1988). Because a petitioner has no constitutional right to counsel in connection with a PCR application and/or an appeal from the denial thereof, he cannot establish cause for procedural default of a claim by showing that PCR counsel was ineffective. <u>Wise v. Williams</u>, 982 F.2d 142, 145 (4th Cir. 1992) *cert. denied*, 508 U.S. 964 (1993). A petitioner must show reasonable diligence in pursuing his claim to establish cause. <u>Hoke v. Netherland</u>, 92 F.3d 1350, 1354 n. 1 (4th Cir. 1996). Further, the claim of cause must itself be exhausted. <u>Edwards v. Carpenter</u>, 529 U.S. 446 (2000) (failure of counsel to present issue on direct appeal must be exhausted in collateral proceeding as ineffective assistance to establish cause for default).

Generally, a petitioner must show some error to establish prejudice. <u>Tucker v. Catoe</u>, 221 F.3d 600, 615 (4th Cir.), *cert. denied*, 531 U.S. 1054 (2000). Additionally, a petitioner must show an actual and substantial disadvantage as a result of the error, not merely a possibility of harm to show prejudice. <u>Satcher v. Pruett</u>, 126 F.3d 561, 572 (4th Cir. 1997).

"Actual innocence" is not an independent claim, but only a method of excusing default. <u>O'Dell v. Netherland</u>, 95 F.3d 1214, 1246 (4th Cir. 1996), *aff'd*, 521 U.S. 151 (1997). To prevail under this theory, a petitioner must produce new evidence not available at trial to establish his factual innocence. <u>Royal v. Taylor</u>, 188 F.3d 239 (4th Cir. 1999). A petitioner may establish actual innocence as to his guilt, *Id.*, or his sentence. <u>Matthews v. Evatt</u>, 105 F.3d 907, 916 (4th Cir. 1997).

### 5. Procedure

Procedural default is an affirmative defense which is waived if not raised by respondents. <u>Gray v. Netherland</u>, 518 U.S. at 165-66. It is petitioner's burden to raise cause and prejudice or actual innocence. If not raised by petitioner, the court need not consider the defaulted claim. <u>Kornahrens v. Evatt</u>, 66 F.3d 1350 (4th Cir. 1995), *cert. denied*, 517 U.S. 1171 (1996).

On direct appeal Reddock argued that the trial court erred in accepting his guilty plea because it was given without an understanding go the sentencing consequences. In the petition for writ of certiorari following denial of the PCR, Reddock asserted counsel was ineffective in advising him to plead guilty "because the holes in the state's case provided ample evidence of reasonable doubt on the question of guilt in the case." The undersigned concludes that Grounds 1-3 were not presented to the state appellate courts for review and are procedurally barred.

**Conclusion**

Petitioner has not shown that the state court's determination that his attorney was ineffective was contrary to, or an unreasonable application of, the Strickland rule. Further, his remaining claims are procedurally barred. It is, therefore recommended, that Respondents be granted summary judgment and the petition be dismissed without an evidentiary hearing.

_____
Joseph R. McCrorey
United States Magistrate Judge

November 30, 2009
Columbia, South Carolina

**The parties are referred to the Notice Page attached hereto.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).